## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>JEFFERY ALLAN MASCIO,<br><br>Debtor. | Bankruptcy Case No. 25-10631 TBM<br>Chapter 7 |
| INDVR BRANDS, INC.<br>INDVR BRANDS U.S., INC.,<br><br>Plaintiffs,<br><br>v.<br><br>JEFFERY MASCIO,<br><br>Defendant. | Adv. Pro. No. 25-1156 TBM |

**ORDER: (1) GRANTING MOTION TO DISMISS INITIAL COUNTERCLAIMS; (2) DENYING MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIMS; (3) GRANTING MOTION FOR LEAVE TO FILE AMENDED ANSWER; AND (4) DENYING MOTION TO STRIKE AMENDED COUNTERCLAIMS**

### I.  Introduction.

The Plaintiffs, INDVR Brands, Inc. and INDVR Brands U.S., Inc. (together "INDVR"), initiated this Adversary Proceeding by filing a complaint against the Chapter 7 Debtor/Defendant, Jeffery Allan Mascio (the "Debtor").  INDVR asserted that the Debtor is indebted to INDVR pursuant to a judgment in the aggregate amount of $56,160,527.  Through the complaint, INDVR pled that the Debtor's discharge should be denied under Sections 727(a)(2), (a)(3) and (a)(4)(A) of the Bankruptcy Code[1] and that the debt should be determined to be nondischargeable under Sections 523(a)(4) and (a)(6) of the Bankruptcy Code.  So, the focus of this Adversary Proceeding is discharge and dischargeability of debt.

---

[1] All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.  Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

In response, the Debtor answered the complaint and also asserted post-petition personal injury tort counterclaims against INDVR for: abuse of process; defamation; tortious interference; and civil conspiracy. INDVR asked for the counterclaims to be dismissed on numerous grounds including lack of subject matter jurisdiction. Subsequently, the Debtor submitted an amended answer and amended counterclaims and, then, a motion for leave to file the amended answer and counterclaims. INDVR opposed the motion for leave to file amended counterclaims and also asked that the proposed amended counterclaims be stricken.

Parsing through the myriad issues, the Court concludes that it does not have subject matter jurisdiction to adjudicate the Debtor's initial and proposed amended counterclaims. So, for the reasons set forth below, the Court dismisses the initial counterclaims and denies leave for the Debtor to submit amended counterclaims because of futility. The Court allows the Debtor to file the amended answer.

## II.     Jurisdiction and Venue.

The Court has subject matter jurisdiction over this Adversary Proceeding concerning the Debtor's entitlement to a discharge and the dischargeability of a particular debt pursuant to 28 U.S.C. § 1334. This Adversary Proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B), (b)(2)(I) and (b)(2)(J), because it seeks a determination as to the dischargeability of a particular debt and a challenge to the Debtor's entitlement to a discharge. However, for the reasons set forth below, the Court concludes that it does not have subject matter jurisdiction over the Debtor's counterclaims. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409 in relation to the Adversary Proceeding generally. However, venue is not proper with respect to the counterclaims because of lack of subject matter jurisdiction.

## III.     Procedural Posture.

### A.     The State Court Judgment.

On May 10, 2024, the Denver County District Court (the "State Court") entered a judgment, which was amended on June 18, 2024 (together, the "Judgment") against the Debtor in the aggregate amount of $56,160,527 (plus fees, costs and interest) in the case captioned: *Cannabis Corp. et al. v. INDVR Brands, Inc. and INDVR Brands U.S., Inc. v. Jeffery Mascio et al.,* Case No. 2021-CV-30686 (District Court, City and County of Denver, Colorado). (Proof of Claim No. 1-1.)

### B.     The Debtor's Main Case.

The Debtor, acting through his lawyer, filed for protection under Chapter 7 of the Bankruptcy Code on February 5, 2025 (the "Petition Date"). (Main Case Docket No. 1, the "Petition.")[2] The Debtor's bankruptcy filing was driven by the Judgment.

---

[2]     The Court will refer to documents filed in the CM/ECF docket for this Adversary Proceeding, using the convention: "Docket No. ___." However, when referring to a document filed in the Debtor's

2

Contemporaneously, the Debtor also submitted his Statement of Financial Affairs and Schedules.  (Main Case Docket No. 1, the "Initial SOFA" and "Initial Schedules.")  The Debtor asserted that: he is unemployed and earns no income; his non-filing spouse receives net monthly income of $8,700 from rentals or operating a business; and he has monthly expenses of $16,433.  (*Id*. at 40-45.)  Thus, the Debtor has negative monthly net income of - $7,733.  The Debtor scheduled $11,582 worth of assets against debts aggregating $50,323,184.  (*Id*. at 46.)  Per the Debtor, he owes $47,561,430 to his largest creditor, INDVR, pursuant to a "Judgment."  (*Id*. at 32.)  To date, proofs of claims in the aggregate amount of $59,438,811 have been filed against the Debtor.  INDVR filed Proof of Claim No. 1-1 for $56,160,526.56.

In his Initial Schedule A/B listing his property interests, the Debtor did not schedule any claims against INDVR or any other "third party, whether or not you have filed a lawsuit or made a demand for payment."  (*Id*. at 15.)  In his Initial Schedule C identifying his exemptions in property, the Debtor did not claim any exemptions for any tort claims. (*Id*. at 20.)  On May 1, 2025, the Debtor, through legal counsel, filed an Amended Schedule A/B and an Amended Schedule C.  (Main Case Docket Nos. 38 and 39.)  Again, the Debtor did not list, schedule, or identify any claims against INDVR or any third parties; or assert any exemptions in such type of claims.  (*Id*.)  The Main Case is open and pending and the Court has not issued a Discharge Order.

**C.     The Adversary Proceeding.**

On May 8, 2025, INDVR initiated this Adversary Proceeding by filing a "Complaint" against the Debtor.  (Docket No. 1, the "Complaint.")  Through the Complaint, INDVR asserted five claims against the Debtor: (1) an objection to discharge under Section 727(a)(2); (2) an objection to discharge under Section 727(a)(3); (3) an objection to discharge under Section 727(a)(4)(A); (4) an objection to the dischargeability of the Judgment under Section 523(a)(4); and (5) an objection to the dischargeability of the Judgment under Section 523(a)(6).

In response to the Complaint, the Debtor (unrepresented by legal counsel in this Adversary Proceeding) filed his "Answer to Complaint and Counterclaim."  (Docket No. 20, the "Initial Answer and Counterclaims.")  Thereafter, INDVR submitted an "Answer to Counterclaims."  (Docket No. 24, the "CC Answer.")  Then, INDVR presented a "Motion to Dismiss Counterclaims."  (Docket No. 26, the "Motion to Dismiss CC.")

Meanwhile, on October 2, 2025, the Court convened a Pre-trial Scheduling Conference (the "Scheduling Conference") on the Complaint and Initial Answer and Counterclaims.  (Docket No. 30.)  At the Scheduling Conference, the Court set a three-

---

Main Bankruptcy Case, *In re Jeffery Allan Mascio*, 25-10631 TBM (Bankr. D. Colo.) (the "Main Case"), the Court will use the convention: "Main Case Docket No. ____."  The Court takes judicial notice of the dockets in this Adversary Proceeding and the Main Case for purposes of describing the procedural background.  *See St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may *sua sponte* take judicial notice of its docket).

3

day trial (June 15-17, 2026) on the three Section 727(a) claims asserted by INDVR in the Complaint. The Court bifurcated the Section 523(a) claims and held in abeyance the prosecution of those claims pending the resolution of the Section 727(a) claims.[3]

On October 10, 2025, the Debtor filed four documents: (1) an "Amended Answer to Complaint" which did not contain any counterclaims (Docket No. 38, the "Amended Answer"); (2) a separate "Amended Counterclaim" (Docket No. 39, the "Amended Counterclaims"); (3) a "Notice of Filing Amended Pleadings as a Matter of Course" (Docket No. 40, the "Notice"); and (4) an "Opposition to INDVR's Motion to Dismiss" (Docket No. 41, the "Objection").

About a week later, on October 16, 2025, INDVR filed a "Reply in Further Support of their Motion to Dismiss Defendant Jeffrey Mascio's Counterclaims." (Docket No. 44, the "Reply"). In the Reply, INDVR reasserted the merits of the Motion to Dismiss CC and also argued that the Amended Answer and Amended Counterclaims were not filed timely and should not be considered by the Court because the Debtor had not obtained INDVR's consent or leave of the Court per Fed. R. Civ. P. Rule 15(a)(1).

The next day, October 17, 2025, the Debtor responded and filed a "Motion for Leave to File Amended Answer and Counterclaim Nunc Pro Tunc to December 10, 2025." (Docket No. 45, the "Motion for Leave to File.") On October 31, 2025, INDVR filed an "Opposition" to the Motion for Leave to File. (Docket No. 48, the "Opposition.") In the Opposition, INDVR repeated the arguments already stated in the Motion to Dismiss CC and Reply. Then, INDVR also filed a "Motion to Strike Amended Counterclaims" (Docket No. 49, the "Motion to Strike") in which INDVR argued that the Amended Counterclaims were not authorized and should be stricken.

So, the Debtor and INDVR have created a bit of a procedural morass through their submission of so many pleadings, motions, and objections after the Motion to Dismiss CC. Having reviewed the various submissions, the Court determines that the most logical and efficient manner to untangle the procedural web is to adjudicate the Motion to Dismiss CC, Objection, and Reply prior to the other pending pleadings, motions, and objections. This is particularly appropriate since the four counterclaims asserted in the Initial Answer and Counterclaims are the same as the four counterclaims alleged in the Amended Counterclaims.

### IV. The Debtor's Counterclaims and INDVR's Motion to Dismiss CC.

### A. The Initial Counterclaims.

---

[3] INDVR's Section 727(a) claims contest the Debtor's general entitlement to a discharge. INDVR's Section 523(a) claims seek a determination that the debt set forth in the Judgment should be excepted from the Debtor's discharge, if he receives one. If INDVR were to prevail on any of its Section 727(a) claims, there would be no need to conduct a trial to determine whether the Judgment debt should be excepted from discharge. So, the Court bifurcated INDVR's Section 727(a) and 523(a) claims for purposes of efficiency and in the interests of judicial economy.

4

As set forth above, in response to the Complaint, the Debtor filed his Initial Answer and Counterclaims. (Docket No. 20.) The Court refers to the counterclaims within such pleading as the "Initial Counterclaims." (*Id.* at 8-10.) The Debtor argues the following in his Initial Counterclaims:

> [The Debtor] brings the following counterclaims against [INDVR] . . . [and] asserts and preserves that the counterclaims pleaded herein are personal to him and not property of the bankruptcy estate, as they arise from post-petition litigation conduct (abuse of process), reputational harm (defamation), interference with personal and prospective relationships, and conspiracy targeting [Debtor] individually. To the extent the Chapter 7 trustee or any party asserts estate ownership, [Debtor] preserves all rights to contest such ownership and to seek derivative or alternative relief as appropriate.

(*Id.* at 8.) Thereafter, in the Initial Counterclaims, the Debtor asserted four counterclaims against INDVR: (1) abuse of process; (2) defamation; (3) tortious interference; and (4) civil conspiracy. Again, the Debtor alleges that all of the Initial Counterclaims arise from INDVR's actions *after* the February 5, 2025 Petition Date and so belong to the Debtor, not the Chapter 7 trustee in the Main Case.

### 1. **Abuse of Process**.

The Debtor identified the first of his Initial Counterclaims as "Abuse of Process." The Debtor alleged in conclusory terms that INDVR "initiated and are prosecuting this adversary in bad faith and for an ulterior purpose unrelated to the proper adjudication of discharge." (*Id.* at 8.) In support, the Debtor stated:

- "INDVR prosecutes this action through conflicted counsel who acquired an equity stake in INDVR in the same 2020 transactions now put at issue; Fortis attorneys are necessary witnesses on material facts including purpose, pricing, formalities and disclosures. Proceeding through such counsel is calculated to gain tactical advantage against the Cook Islands Trust . . . (a significant shareholder of INDVR's voting equity) for the sole purpose of derailing the Trust from exercising its shareholder rights against Hugh Hemple and Fortis Law Partners."[4]

- "The retaliatory nature of Plaintiffs' conduct is further demonstrated by their January 17, 2025 motion to add the Cook Islands Trust and JG Family

---

[4] On August 22, 2025, the Debtor filed a "Motion to Disqualify David F. Olsky and Fortis Law Partners, LLC as Counsel for INDVR in this Adversary Case." (Docket No. 19.) After a round of briefing, the Court issued its "Order Denying Motion to Disqualify David F. Olsky and Fortis Law Partners, LLC as Counsel for INDVR." (Docket No. 28.) To sum up, the Court rejected the same contention that the Debtor asserts in his Initial Counterclaims as grounds for disqualification.

> Limited Partnership as parties to the Colorado judgment, a judgment which remains on appeal. The filing occurred only months after the Trust, through Canadian counsel, issued a September 25, 2024 shareholder demand letter to INDVR seeking disclosure regarding Hugh Hempel's 137 million-share issuance, the 2020 private placement (Fortis Law Partners participated), and undisclosed financial statements."
>
> ● "Plaintiffs' attempt to bind the Trust post-judgment, without service and during active Bankruptcy stays, was a calculated abuse of process intended to retaliate against the Trust for exercising its shareholder rights in Canada and to obstruct the initiation of a Canadian shareholder class action against Hempel and Fortis."

(*Id.* at 8-9.)

### 2. **Defamation**.

The Debtor identified the second of his Initial Counterclaims as "Defamation." The Debtor made only the following conclusory statement as his defamation counterclaim:

> Plaintiffs have published false statements accusing Defendant of theft, fraud, and concealment in court filings and related communications, knowing such statements to be false or with reckless disregard for their truth, thereby causing reputational and economic harm.

(*Id.* at 9.)

### 3. **Tortious Interference**.

The Debtor identified the third of his Initial Counterclaims as "Tortious Interference." The Debtor recited only the following conclusory statement as his tortious interference counterclaim:

> By asserting knowingly false allegations and initiating meritless actions, Plaintiffs have intentionally and improperly interfered with Defendant's prospective and existing business relationships and opportunities, causing damages.

(*Id.*)

### 4. **Civil Conspiracy**.

The Debtor identified the fourth of his Initial Counterclaims as "Civil Conspiracy." In support, the Debtor charged that:

6

- "Plaintiffs, acting in concert with others, combined to pursue a coordinated campaign of meritless litigation and defamatory statements to damage Defendant's reputation and business, resulting in harm.  Upon information and belief, Plaintiffs have further acted in concert with judgment creditors Peter and Suzanne Graham to coordinate repetitive and meritless litigation and nondischargeability actions, as part of a deliberate campaign to harass Defendant and multiply proceedings."

- "Plaintiffs' conspiracy extended to targeting the Cook Islands Trust after it demanded shareholder records in September 2024, with Fortis and Hempel orchestrating efforts to add the Trust to the non-final Colorado judgment at issue in the adversary proceeding in January 2025.  The purpose of these coordinated attacks was to discredit the Trust, suppress it shareholder litigation rights, and prevent it from pursuing a Canadian class action challenging insider transaction by Hempel and Fortis.  Such conduct demonstrates a common scheme to weaponize litigation to protect their own misconduct and silence opposition."

(*Id*. at 9-10.)

### B.     The Motion to Dismiss CC.

In response to the Initial Counterclaims, INDVR submitted the CC Answer. (Docket No. 24.)  Among other affirmative defenses, INDVR asserted that the Debtor lacked standing to assert the Initial Counterclaims and that this Court "lacks jurisdiction to hear the non-bankruptcy claims set forth in the Counterclaims." (*Id*. ¶¶ 10 and 19.)

Ten days after filing the CC Answer, INDVR filed the Motion to Dismiss CC pursuant to both Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(c) for judgment on the pleadings.[5]  (Docket No. 26 at 1.)  Among other things, INDVR stated: "the Court has no jurisdiction to hear [the Initial Counterclaims], and the [counter]claims should be dismissed . . . pursuant to Rule 12(b)(1)."  (*Id*. at 2.)  In addition to the foregoing, INDVR also asserted that the Initial Counterclaims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  INDVR cited *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) as the Fed. R. Civ. P. 12(b)(6) standard.

### C.     The Objection.

The main thrust of the Debtor's Objection was that the Debtor should be permitted to amend his Initial Answer and Counterclaims under Fed. R. Civ. P. 15(a). (Docket No. 41.)  The Debtor reiterated that the Initial Counterclaims "arose from conduct occurring **after** the filing of Mascio's bankruptcy petition and are therefore **not subject to the automatic stay**." (Docket No. 41, at 5; emphasis in original.)  However,

---

[5]    Fed. R. Bankr. P. 7012(b) makes Fed. R. Civ. P. 12(b)-(i) applicable to adversary proceedings.

the Debtor did not address lack of subject matter jurisdiction over the Initial Counterclaims per Fed. R. Civ. P. 12(b)(1).

**D.    The Reply.**

In the Reply, INDVR mainly reasserted that the Initial Counterclaims fail to state claims upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). (Docket No. 44.) INDVR also contested the Amended Answer and Amended Counterclaims as procedurally improper pursuant to Fed. R. Civ. P. 15(a)(1).[6]

**V.    Legal Analysis.**

**A.    The Initial Counterclaims Must Be Dismissed for Lack of Subject Matter Jurisdiction.**

In the Motion to Dismiss CC, INDVR asserted numerous grounds for dismissal of the Initial Counterclaims including lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Even in the absence of a motion, the Court has an independent duty to assess its subject matter jurisdiction to adjudicate the Initial Counterclaims.

**1.    Standards for Fed. R. Civ. P. 12(b)(1) Dismissal.**

Fed. R. Civ. P. 12(b)(1) permits a party to assert a defense to a claim for relief for "lack of subject-matter jurisdiction" by motion. "A dismissal under Rule 12(b)(1) 'is not a judgment on the merits of the plaintiff's claim' but rather 's determination that the court lacks authority to adjudicate the matter.'" *OptumRx PBM of Ill. v. Nat'l. Benefit Builders, Inc.*, 2025 WL 2636574, at *5 (D. Colo. Sept. 12, 2025) (quoting *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n,* 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016)); *see also Chipotle Mexican Grill, Inc. v. Chevedden*, 2014 WL 1004529, at *1 (D. Colo. Mar. 14, 2014) (same). Consequently, if a court lacks jurisdiction, it cannot render judgment. Furthermore, "the court must consider a Rule 12(b)(1) motion before a 12(b)(6) motion because a challenge to the merits is moot if the court lacks subject matter jurisdiction." *French v. St. Rita's Med. Ctr.*, 2008 WL 3822278 (D. N.D. Ohio Aug. 12, 2008).

When reviewing a Rule 12(b)(1) motion to dismiss, the Court must determine whether the attack is a "facial" attack based upon the allegations of, in this case, the Initial Counterclaims, or a "factual" attack.

> A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can take two forms: a facial or a factual attack. "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." By contrast "[a] factual attack goes beyond the allegation in the complaint and adduces evidence to contest jurisdiction.'

---

[6]    Fed. R. Bankr. P. 7015 makes Fed. R. Civ. P. 15 applicable to adversary proceedings.

*Grace Bible Fellowship v. Polis*, 2024 WL 1340201, at *2 (10th Cir. Mar. 29, 2024) (quoting *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020)). *See also U.S. v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (same); *Bustillos v. U.S.*, 2025 WL 2924648, at * 3 (D. Colo. Sept. 4, 2025); *Chipotle*, 2014 WL 1004529, at *1; *Semadeni v. Aurora Loan Servs., LLC (In re Semadeni)*, 489 B.R. 576, 583 (Bankr. D. Colo. 2013) ("When considering dismissal for lack of standing or on a facial attack on subject matter jurisdiction under Rule 12(b)(1), the court must also assume the material facts in the complaint are true and construe the complaint in favor of the plaintiff."). If the attack on jurisdiction is "factual," then the court may consider facts outside the pleadings. *Grace Bible*, 2024 WL 1340201, at *2 ("when faced with a factual attack on subject matter jurisdiction, the district court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'").

Having reviewed the Initial Counterclaims and the Motion to Dismiss CC, the Court construes INDVR's challenge to the Court's subject matter jurisdiction as a facial challenge to the Initial Counterclaims. For example, INDVR stated: "the Court has no jurisdiction to hear [the Initial Counterclaims], and the [counter]claims should be dismissed . . . pursuant to Rule 12(b)(1)." (Docket No. 26 at 1.) And, at least with respect to jurisdiction, INDVR has not challenged any facts material to jurisdiction and instead seems to rely on the Initial Counterclaims themselves as justifying dismissal.

For purposes of adjudicating subject matter jurisdiction, the Court accepts as true the allegations in the Initial Counterclaims coupled with the Debtor's confirmation that the Initial Counterclaims "arose from conduct occurring **after** the filing of Mascio's bankruptcy petition and are therefore **not subject to the automatic stay**." (Docket No. 41, at 5; emphasis in original.) The Debtor's contention that all the Initial Counterclaims arose after the Petition Date also is supported by the Debtor failing to identify any pre-petition claims against INDVR or any exemptions pertaining to such claims in his Statement of Financial Affairs and Schedules (as amended).

### 2. The Court Lacks "Arising Under" or "Arising In" Jurisdiction Over the Initial Counterclaims.

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction. Jurisdiction is a threshold question that a federal court must address before reaching the merits of a statutory question." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *In Play Membership Golf, Inc. v. Billy Casper Golf, LLC (In re In Play Membership Golf, Inc.)*, 576 B.R. 15, 20 (Bankr. D. Colo. 2017) ("Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'").

The core jurisdictional grant for bankruptcy cases is 28 U.S.C. § 1334(b) which provides:

9

> . . . the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

The foregoing types of bankruptcy jurisdiction are often characterized by shorthand as "arising under," "arising in," and "related to" jurisdiction. Congress also mandated that a bankruptcy judge "determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding . . . or is a proceeding that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). The Supreme Court summarized bankruptcy jurisdiction as follows:

> [t]he jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute. Title 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." The district courts may, in turn, refer "any and all proceedings arising under title 11 or arising in or related to a case under title 11 to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

*Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995); *see also Gardner v. U.S. (In re Gardner)*, 913 F.2d 1515, 1517-18 (10th Cir. 1990) ("Bankruptcy courts have only the jurisdiction and powers expressly or by necessary implication granted by Congress.").

The Debtor's Initial Counterclaims are for alleged personal injury torts that arose after the Petition Date: abuse of process; defamation; tortious interference with contract and business relationships; and civil conspiracy.[7] The foregoing are state-law claims. Plainly, none of those claims "arise under" the Bankruptcy Code or "arise in" the Main Case. They are not "core" claims. Instead, they are the type of claims that exist outside of the bankruptcy context. The Debtor candidly admits as much. (Docket No. 39 ¶ 2; "These counterclaims are related to the bankruptcy case but are non-core state-law claims . . . .").

### 3. The Court Lacks "Related To" Jurisdiction Over the Initial Counterclaims.

Although the Court does not have "arising under" or "arising in" jurisdiction over the Initial Counterclaims, 28 U.S.C. § 1334(b) also allows jurisdiction "related to cases under title 11." The Bankruptcy Code does not define "related to" proceedings. *Celotex*, 514 U.S. at 307 ("Congress did not delineate the scope of 'related to' jurisdiction."); *McIntyre v. Active Energies Solar, LLC (In re McIntyre)*, 2022 WL 17999539, at *3 (10th Cir. BAP Dec. 30, 2022) (unpublished) ("There is, however, no

---

[7] The jurisdictional grants set forth in 28 U.S.C. § 157 also includes the following limitation: "The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending . . . ." 28 U.S.C. 157(b)(5).

statutory definition for determining if a matter falls within a bankruptcy court's 'related to' subject matter jurisdiction."); *Pro. Home Health Care Inc. v. Complete Home Health Care, LLC (In re Pro. Home Health Care, Inc.)*, 2002 WL 1465914, at *2 (Bankr. D. Colo. Jul. 2, 2002) (same).

However, courts have articulated standards for "related to" jurisdiction. *Gardner*, 913 F.2d at 1518. The standard most frequently used stems from *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984 (3d Cir. 1984), which has been effectively endorsed by the Supreme Court and the Tenth Circuit. *Celotex*, 514 U.S. at 308; *Gardner*, 913 F.2d at 1518. *Pacor* states:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*

*Pacor*, 743 F.2d at 994 (emphasis in original). The Tenth Circuit further explained: "Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, option or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate." *Gardner*, 913 F.2d at 1518 (citing *Pacor*, 743 F.2d at 994).

*Celotex* added two cautionary notes. The first recognized that the term "related to" jurisdiction used by Congress "must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate," but that "a bankruptcy court's 'related to' jurisdiction cannot be limitless." *Celotex*, 514 U.S. at 308 (stating agreement with the Third Circuit in *Pacor*). The second observation was that the notion of "related to" jurisdiction may reach farther in a Chapter 11 reorganization case than in a Chapter 7 liquidation. *Id*. at 310 ("The jurisdiction of bankruptcy courts may extend more broadly in the [Chapter 11] case than in [a Chapter 7 liquidation case].").

Since the Initial Counterclaims do not "arise under" the Bankruptcy Code or "arise in" the Main Case, the remaining jurisdictional question becomes whether the Court has "related to" jurisdiction. The Debtor is a Chapter 7 debtor, not a Chapter 11 debtor. Thus, he does not enjoy the broader view of "related to" jurisdiction applied to Chapter 11 debtors and estates.

The Initial Counterclaims are all non-core personal injury tort claims. So, the Debtor's only possible jurisdictional tether is if the Initial Counterclaims are "related to" the Debtor's Main Case. The strength of the tie depends on what impact the Initial Counterclaims litigation will have on the administration of the Chapter 7 case. Framed differently, the issue is whether the outcome of the Initial Counterclaims will "have any effect on the estate being administered in bankruptcy." *Pacor*, 743 F.2d at 994. The answer is "no." The litigation over the Initial Counterclaims will not have any

11

conceivable impact on the administration of the Debtor's Chapter 7 Main Case. Accepting the Debtor's contention that all the Initial Counterclaims arose after the Petition Date, it would be the Debtor personally who would benefit from prevailing on the Initial Counterclaims. No benefit would inure to the creditors of his bankruptcy estate. Ergo, "related to" jurisdiction is absent.

The Court observes that at least two prior cases from this jurisdiction have squarely confronted the scope of "related to" jurisdiction in the context of claims brought by Chapter 7 debtors and are particularly instructive: *Semadeni*, 489 B.R. at 586 ("To the extent that any of the Debtor's claims against any of the defendants arose [after the petition date], they are not assets of the [estate], and the claims have no connection to or effect on [the case]."); *Midwest Motor Supply Co. v. Hruby (In re Hruby)*, 512 B.R. 262 (Bankr, D. Colo. 2014). In *Hruby*, a motion for relief from stay by a creditor also sought injunctive relief against a Chapter 7 debtor. When considering whether "cause" existed to grant the creditor relief from stay under Section 362(d)(1), the Court stated: "the Court must also consider its jurisdiction to hear the underlying dispute in the event it denies the Movant relief from stay." *Hruby*, 512 B.R. at 267. The *Hruby* court then applied the *Pacor* and *Gardner* test for "related to" jurisdiction and concluded: "[t]he injunctive relief requested by the Movant is not a matter that impacts the administration of the bankruptcy estate. The injunctive relief that the Movant seeks is unquestionably intended to alter the Debtor's 'right, liabilities, options, or freedom of action, but, because this is a case under chapter 7, the relief requested against the Debtor can have no substantive impact on administration of his bankruptcy estate." *Id*. at 268. Thus, the *Hruby* court recognized the absence of subject matter jurisdiction over the underlying dispute." *Id*. The Court concurs.

### 4. The Debtor Has Not Met His Burden to Establish Federal Jurisdiction.

"The burden of establishing subject-matter jurisdiction falls on the party invoking it." *Bustillos*, 2025 WL 2924648, at * 3 (citing *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005)). Stated differently "Federal courts have limited jurisdiction, and a party asserting jurisdiction bears the burden of overcoming the presumption that it is lacking." *Angel Fire Corp. v. Angel Fire Resort Operations, LLC (In re Angel Fire Corp.)*, 2013 WL 1856350, at *8 (D. N.M. May 2, 2013). The District Court for the District of Colorado has instructed: "[a] federal court is to presume that a cause of action lies outside of this limited jurisdiction unless the party asserting federal jurisdiction . . . can establish that jurisdiction is proper." *Centrix Fin. Liquidating Trust v. Sutton (In re Centrix Fin., LLC)*, 2019 WL 4279121, at *3 (D. Colo. Sep. 10, 2019).

The Debtor has presented nothing to persuade this Court that it has subject matter jurisdiction over the Initial Counterclaims. Quite the opposite. Accepting the Debtor's allegations in the Initial Counterclaims as true coupled with the Debtor's contention that all the Initial Counterclaims arose after the Petition Date, the Court finds that it patently lacks subject matter jurisdiction over the Initial Counterclaims.

### 5. If the Initial Counterclaims Were Pre-petition Claims, the Debtor Would Not Have Standing to Pursue Them.

As set forth above, the Court has accepted the Debtor's contention that all the Initial Counterclaims arose after the Petition Date. However, even if the Initial Counterclaims arose pre-petition, the Court still would not have jurisdiction because of the Debtor's lack of standing. Standing is "a threshold issue in every federal case." *Thomas v. Fed. Nat'l Mortg. Assoc. (In re Thomas),* 469 B.R. 915, 921 (10th Cir. BAP 2012). The Tenth Circuit "has repeatedly characterized standing as an element of subject matter jurisdiction." *Chipotle*, 2014 WL 1004529, at *2. "For a court to have subject-matter jurisdiction, a plaintiff must have standing." *OptumRx*, 2025 WL 2636574, at *6 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180-81(2000)).

The party asserting standing bears the burden of proving standing. *Chipotle,* 2014 WL 1004529, at *2; *Thomas,* 469 B.R. at 921; *Lewis v. McCallum (In re Lewis),* 378 B.R. 418 (Table), 2007 WL 2189343 (10th Cir. BAP 2007) (unpublished); *Ebel v. King (In re Ebel),* 338 B.R. 862, 869 (Bankr. D. Colo. 2005) ("Once the issue of standing was controverted by the Trustee, the burden was on [the party asserting standing] to offer evidence at trial that would demonstrate his standing."). INDVR contested the Debtor's standing in the Motion to Dismiss CC.

If the Initial Counterclaims arose pre-petition, the Debtor would lack standing to pursue them because such claims would be within the exclusive purview of the Chapter 7 trustee, not the Debtor. As explained in *Semadeni*, "to the extent the claims [the debtor asserts arose prepetition], the claims are assets of the estate in the [debtor's bankruptcy estate]. Debtor did not list the claims [in his case], they have not been abandoned, and the case remains open. The Debtor lacks standing to assert these claims; they may be prosecuted only by the Chapter 7 trustee." *Semadeni*, 489 B.R. at 585. So, if the Initial Counterclaims arose pre-petition, the Court would be required to dismiss them for lack of standing and resulting lack of subject matter jurisdiction.

### 6. The Initial Counterclaims Are Not Compulsory Counterclaims.

In his Amended Counterclaims, the Debtor makes a passing reference to Fed. R. Bankr. P. 7013. (Docket No. 39 ¶ 2.) He avers: "These counterclaims are related to the bankruptcy case but are non-core state law claims under 28 U.S.C. § 157(c) and are brought pursuant to Fed. R. Bankr. P. 7013 . . . ." (*Id.*) The Debtor never expanded on the contention. But, for completeness, the Court takes up the argument and concludes that Fed. R. Bankr. P. 7013 does not save the Initial Counterclaims from dismissal.

Fed. R. Bankr. P. 7013, which makes Fed. R. Civ. P. 13 applicable to adversary proceedings, governs certain counterclaims brought by a party "sued by a trustee or debtor-in-possession," and includes a safeguard for a trustee or debtor-in-possession who fails to plead a counterclaim. Neither provision is applicable to the Debtor's Initial Counterclaims. The Debtor is not being sued by a trustee or debtor-in-possession; and he is not a trustee or debtor-in-possession.

Fed. R. Civ. P. 13 sets the ground rules for when a counterclaim is "compulsory," which generally means a party must assert it or forfeit it. Specifically, "[a] pleading must state as a counterclaim any claim that — at the time of service — the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1)(A) and (B). With some exceptions, not applicable here, all other counterclaims are "permissive" meaning a pleading "may state as a counterclaim against an opposing party's claim that is not compulsory." Fed. R. Civ. P. 13(b).

The Court must review both the Complaint and the Initial Counterclaims to assess whether the Initial Counterclaims "arise[] out of the transaction or occurrence that is the subject of the [Complaint] and "do[] not require adding a party over whom the court cannot acquire jurisdiction." The Complaint brought by INDVR challenges the Debtor's entitlement to a discharge under Section 727(a) as well as the dischargeability of the debt owed to INDVR per the Judgment under Section 523(a).

Plainly, the Initial Counterclaims do not "arise[] from the transaction or occurrence that is the subject of the [Complaint]." They are two different things. The Complaint centers on discharge and nondischargeability under Sections 727(a) and 523(a). But the Initial Counterclaims rely only on separate alleged post-petition occurrences. So, the Debtor's cursory reference to Fed. R. Bankr. P. 7013 is unavailing: the Initial Counterclaims are not "compulsory" and the Court's conclusion that its lacks subject matter jurisdiction over the Initial Counterclaims stands.

### 7. Without Subject Matter Jurisdiction, the Court Need Not Address the Rule 12(b)(6) Components of the Motion to Dismiss CC.

INDVR brought its Motion to Dismiss CC under Fed. R. Civ. P. 12(b)(1), (b)(6) and (c). Fed. R. Civ. P. 12(c) provides: "After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." The Court reviews motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) "under the same standard of review applicable to a motion to dismiss under Rule 12(b)(6). In ruling on a motion to dismiss under Rule12(b)(6), the court must accept the well-pleaded allegations as true and must construe all reasonable inferences in favor or the plaintiff." *Lisco v. Wright*, 2011 WL 7428884, at *1 (D. Colo. Nov. 9, 2011) (citing *McHenry v. Utah Valley Hosp.*, 927 F.2d 1125, 1126 (10th Cir. 1991)); *O'Brien v. Montoya (In re Torres-Montoya)*, 580 B.R. 556, 560 (Bankr. D. N.M. 2017).

As a general matter, when considering a motion to dismiss under Fed R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations in a complaint and view them in the light most favorable to the plaintiff. *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Twombly*, 550 U.S. at 570). This process is "a context-specific task" which depends on the elements of a particular claim and requires the Court "to draw upon its judicial experience and common sense." *Burnett*, 706 F.3d at 1236 (quoting *Iqbal*, 556 U.S. at 679).

However, this Court has determined that it does not have subject matter jurisdiction over the Debtor's Initial Counterclaims. In the absence of subject matter jurisdiction, the Court is without authority to address whether the facts stated in the Initial Counterclaims are sufficient to state the various claims for relief asserted therein. *See, Chipotle*, 2014 WL 1004529, at *1; *OptumRx*, 2025 WL 2636574, at *5 and *8 (having concluded that the plaintiff had standing, and therefore, that the court had subject matter jurisdiction, the court proceeded with its analysis of the Rule 12(b)(6) motion to dismiss).

B.     **The Motion for Leave Must Be Granted in Part and Denied in Part**.

    1.     **The Motion for Leave and Opposition**.

Whilst the Court has concluded that it has no subject matter jurisdiction over the Initial Counterclaims, the Debtor created a hitch. Before the Court ruled on the jurisdictional issued raised in the Motion to Dismiss CC, the Debtor filed his Amended Answer and Amended Counterclaims. (Docket Nos. 38 and 39.) This created more filings and confusion. Through the Notice, the Debtor contended that he timely filed the Amended Answer and Amended Counterclaims under Fed. R. Civ. P. 15(a)(1)(B) "as a matter of course." (Docket No. 40.)

Thereafter, INDVR challenged the timeliness of the Amended Answer and Amended Counterclaims under Fed. R. Civ. P. 15. (Docket No. 44.) That challenge apparently caused the Debtor to submit his Motion for Leave to File, in which the Debtor implores the Court to grant leave to file the Amended Answer and Amended Counterclaims "*nunc pro tunc* to October 10, 2025." (Docket No. 45.) The Debtor seemingly acknowledged he was not in time to file the Amended Answer and Amended Counterclaims without INDVR's consent or leave of the Court. He stated:

> . . . the short delay was inadvertent and caused no prejudice to INDVR . . . . Defendant's amendments were filed not to alter the factual substance of his claims, but to clarify the temporal scope of those allegations in conformity with this Court's bifurcation of § 727 and § 523 issues in the Scheduling Order. The amended pleading distinguished post-petition extrajudicial conduct — communications with third parties unrelated to pending litigation — from the pre-petition corporate disputes already before other courts.

(Docket No. 45 ¶¶ 3-4.) He then resorted to Fed. R. Civ. P. 15(b) which provides that "[t]he court should freely give leave when justice so requires." (Id. ¶ 5.) The Debtor

15

claims he is proceeding in good faith, and he has brought his Motion for Leave at an early stage of this Adversary Proceeding. As such, he assets: "INDVR will suffer no prejudice because [they] ha[ve] already addressed the amended pleading in [their] reply." (*Id*. ¶ 10.) Finally, the Debtor urges: "Granting the [Motion for Leave to File] will cure any technical timing defect and permit the case to proceed on the merits consistent with Rule 15's liberal standard and the Scheduling Order." (*Id*. ¶ 9.)

Next, INDVR opposed the Motion for Leave to File by submitting extraneous materials and arguing that they would suffer prejudice if the Motion for Leave to File is granted with respect to the Amended Counterclaims. (Docket No. 48.) INDVR also referenced Colorado's Anti SLAPP Statute, C.R.S. § 13-20-1101 . . . . (*Id.* at 15.) Furthermore, INDVR argued that any amendment of the Initial Counterclaims would be futile. Notwithstanding the foregoing, INDVR did not seem to oppose the Debtor's Motion for Leave to File as it pertained to the Amended Answer.

  **2.**  <u>**Law Applicable to Amending Pleadings**</u>.

Amendment to the pleadings, in this case, the Answer and Initial Counterclaims is governed by Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) governs the process for amending pleadings after the time for amending of right has expired as provided for in Fed. R. Civ. P. 15(a)(1). Rule 15(a)(2) permits a party to amend its pleading only with the "opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2) further states: "[t]he court should freely give leave when justice so requires."

Whether to permit a party to amend its pleading is left to the sound discretion of the court. *Las Vegas Ice and Cold Storage Co. v. Far West Bank*, 893 F. 2d 1182, 1185 (10th Cir. 1990); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006); *Church Mut. Ins. Co. v. Coutu*, 2018 WL 822552, at *2 (D. Colo. Feb. 2, 2018). When a party seeks to amend before the deadline set in a pretrial scheduling order expires, a movant need not demonstrate the higher standard of "good cause" for modifying a scheduling order as is required under Fed. R. Civ. P. 16(b)(4). *Church Mut.*, 2018 WL 822552, at *2 (citing *Fernandez v. Bridgestone/Firestone, Inc.*, 105 F. Supp. 2d 1194, 1195 (D. Colo. 2000)). Unlike the more stringent standard imposed by Fed. R. Civ. P. 16(b)(4), the Fed. R. Civ. P. 15(a)(2) standard is more lenient. *Husky Ventures, Inc. v B55 Invs., Ltd.*, 911 F.3d at 1000, 1019 (10th Cir, 2018). "The purpose of the Rule [15] is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Hardin v. Manitowoc-Forsythe Corp.*, 691 F. 2d 449, 456 (10th Cir. 1982).

Factors which weigh into whether to deny a motion for leave to amend include: "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Church Mut.*, 2018 WL 822552, at *2. The Tenth Circuit has observed that timeliness and prejudice are closely related. *Minter*, 451 F.3d at 1205. As to the former, "undue delay," the focus of any analysis must be "on the adjective: 'Lateness does not of itself justify the denial of the amendment.' . . . Rule 15(a) does not restrict a

16

party's ability to amend its pleadings to a particular stage in the action." *Id*. (internal citation omitted).  "At some point, however, delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party." *Id*.  The Tenth Circuit focuses its inquiry into whether the delay in seeking amendment is "undue" on "the reasons for the delay.  We have held that denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'" *Id*. at 1206 (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993)). "Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Las Vegas Ice*, 893 F.2d at 1185 (motion to amend not brought until approximately a year and a half after the complaint was filed, 9 months after partial summary judgment was entered and only a few months before trial was denied as untimely).

Under Tenth Circuit precedent "the most important factor in deciding a motion to amend the pleadings is whether the amendment would prejudice the nonmoving party." *Minter*, 451 F.3d at 1207.  "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'  Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id*. at 1208.  The party opposing the amendment bears the burden of showing prejudice. *Zimmerling v. Waterfield Bank*, 2009 WL 3711496, at *1 (D. Colo. Nov.3, 2009) ("The prejudice with which the Rule is concerned is the prejudice to the party's ability to prosecute or defend.").

Another consideration, key in the circumstances of this Adversary Proceeding, is whether allowing the amendment would be futile.  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Church Mut.*, 2018 WL 822552, at *5.  If a plaintiff can prove no set of facts in support of the proposed amendment that would entitle that plaintiff to relief, the amendment would be futile. *Zimmerling*, 2009 WL 3711496, at *1.

### 3. The Motion for Leave to File Should Be Granted Only In Part.

#### a. INDVR Will Neither Suffer Prejudice Nor Will it be Futile to Permit the Debtor to Amend his Answer.

INDVR has not expressly opposed the Debtor's Motion for Leave to File as it relates to the Debtor's Amended Answer.  The Opposition is directed only to the Amended Counterclaims.  The Court has reviewed the Answer and Amended Answer and concludes that the Debtor should be permitted to file his Amended Answer.  Importantly, the Debtor presented the Amended Answer in response to the Court's comments at the Scheduling Conference.  Furthermore, the Debtor filed the Motion for Leave to File in the early stages of this Adversary Proceeding.  He filed it prior to the December 15, 2025 deadline for amending pleadings set in the Scheduling Order; well before the April 1, 2026 deadline to complete discovery; and well in advance of the June

15, 2026 trial date. So INDVR failed to show it would suffer prejudice if the Debtor is permitted to amend his Answer. Accordingly, and in keeping with the admonition of Fed. R. Civ. P. 15(a)(2) that leave to amend should be liberally granted, the Court permits the Debtor to file his Amended Answer.

### b. **It Would Be Futile to Permit the Debtor to File his Amended Counterclaims**.

When deciding INDVR's Motion to Dismiss CC under Fed. R. Civ. P. 12(b)(1), the Court conducted a searching analysis of this Court's subject matter jurisdiction under 28 U.S.C. 1334(b). The Court observed that the Initial Counterclaims are for alleged personal injury torts that arose after the Petition Date: abuse of process; defamation; tortious interference with contract and business relationships; and civil conspiracy. The Court concluded that none of those claims "arise under" the Bankruptcy Code or "arise in" the Main Case and, therefore, are not "core" claims. The Court also determined that the Initial Counterclaims are not "related to" the Main Case. So, the Court lacks subject matter jurisdiction over the Initial Counterclaims.

But, then, the Debtor filed the Motion for Leave to File asking that he be permitted to file the Amended Counterclaims. The Debtor suggests that his Amended Counterclaims cure the defects in the Initial Counterclaims: "[g]ranting the motion will cure any technical timing defect and permit the case to proceed on the merits consistent with Rule 15's liberal standard and the Scheduling Order." (Docket No. 45 ¶ 9.)

However, at least with respect to subject matter jurisdiction, the Court disagrees. Comparing the Initial Counterclaims to the Amended Counterclaims, the principal differences relate to form and facts. For example, in the Amended Counterclaims, the Debtor proposed to add new sections titled "Preliminary Statement and Jurisdiction," "Parties," and "Factual Background," which were not present in the Initial Counterclaims. The new proposed facts added allegations relating to more post-petition conduct seemingly designed to address INDVR's Fed. R. Civ. P. 12(b)(6) arguments for failure to state a claim upon which relief can be granted.

Nevertheless, the Amended Counterclaims purport to state exactly the same four personal injury tort claims that he asserted in the Initial Counterclaims: abuse of process; defamation; tortious interference with contract and business relationships; and civil conspiracy. And, the Debtor confirms that "[t]hese claims arose after Mascio's February 2025 bankruptcy petition . . . . They are personal to Mascio and not property of the estate." (Docket No. 39 ¶ 30.)

So, the Court's subject matter jurisdiction analysis of the Initial Counterclaims applies with equal force to the Amended Counterclaims. There simply is no daylight between the two. If the Court allowed the Amended Counterclaims to be filed, the Court would have to dismiss them for lack of subject matter jurisdiction. Under such circumstances, the Amended Counterclaims are wholly futile. *Church Mut.*, 2018 WL 822552, at *5 ("A proposed amendment is futile if the complaint, as amended, would be

18

subject to dismissal."). Accordingly, the Court denies the Debtor's request for leave to file the Amended Counterclaims.

There is one last issue. INDVR filed the Motion to Strike asking that the Court "strike the Amended Counterclaims because they have been improperly filed without leave of the Court." (Docket No. 49, at 2.) The Motion to Strike seems unnecessary and repetitive of the Opposition. Regardless, it is now moot because the Court has determined that it lacks subject matter jurisdiction over the Initial Counterclaims as well as the proposed Amended Counterclaims and has denied the Motion for Leave to File as it pertains to the Amended Counterclaims.

## VI. Conclusion and Orders.

In sum, the Court determines that this Court is without subject matter jurisdiction to hear the Debtor's Initial Counterclaims or the Amended Counterclaims. Accordingly, for the reasons recited throughout this Order, the Court:

ORDERS that the Motion to Dismiss CC (Docket No. 26) is GRANTED, and the Debtor's Initial Counterclaims are DISMISSED;

FURTHER ORDERS that Debtor's Motion for Leave to File (Docket No. 45) is DENIED in part and GRANTED in part. The Debtor is DENIED leave to file his Amended Counterclaims. But, the Debtor is GRANTED leave to file his Amended Answer; and

FURTHER ORDERS that the Motion to Strike (Docket No. 49) is DENIED as moot.

DATED this 17th day of December, 2025.

BY THE COURT:

*Thomas B. McNamara*
Thomas B. McNamara,
United States Bankruptcy Judge

19